FILED MA

FEB 15 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

United States District Court
Middle District Tennessee

)  Craig Cunningham **1:17-cv-01216**
)  Plaintiff, Pro-se
)                **Judge John Robert Blakey**
)        v.        **Magistrate Judge Maria Valdez**
)
) Health Plan Intermediaries Holdings, LLC, dba Health Insurance Innovations, ,
National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc.,
Loyal American Life Insurance Company, Alliance for consumers USA, Inc.,
Shirley Garcia, Eric Banks, GIP Technology, Inc., Paul Maduno, Ada Maduno,
Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life
Insurance Company, Broadspire, Inc., Champion Life Insurance Company,
Chubb Group Insurance Company, Federal insurance Company, Unified Life
Insurance Company, National Congress of Employers, Inc.
)    Defendants.

**Plaintiff's Original Complaint**

1. The Plaintiff in this case is Craig Cunningham, a natural person and was

   resident of Davidson County at all times relevant to the complaint, and

   currently has a mailing address of 5543 Edmondson Pike, ste 248,

   Nashville, TN 37211

2. Health Plan Intermediaries Holdings, LLC, dba Health Insurance

   Innovations is a Delaware corporation operating from 15438 N. Florida

   Ave., ste 201, Tampa, FL 33613 and can be served via registered agent

   Corporation Service Company 2908 Poston Ave., Nashville, TN 37203.

3. National Health Hub, LLC is a Florida corporation that can be served via

   corporate manager and registered agent Samuel LLanes, 8845

   Ramblewood Dr. unit 1704, Coral Springs, FL 33071.

4. Cigna Corporation is a Conneticut corporation and can be served via registered agent CT Corporation System, One Corporate Center, Hartford, CT 06103.

5. Shirley Garcia is a natural person and can be served at 2230 NE 56th PL, Apt 230, Fort Lauderdale, FL 33308 or 1731 SW 5th Ave., Pompano Beach, FL 33060 or 2950 W. Cypress Creek Road, ste 301 Fort Lauderdale, FL 33309.

6. Eric Banks is a natural person and can be served at 5817 McKinley St Apt G, Hollywood, FL 33021-4573 or 8248 NW 24th St., Coral Springs, FL 33065 or 677 Berkley St., Boca Raton, FL 33487.

7. Loyal American Life Insurance Company is a Texas corporation and can be served via Registered agent and corporate officer Jessica Tutwiler, 11200 Lakeline Blvd., ste 100, Austin, TX 78717.

8. Asentra Health Solutions, LLC is a Hawaii corporation operating from 1 Bradle Road, Woodbridge, CT 06525 and can be served via registered agent Incorp Services, Inc., 1136 Union Mall Ste 301, Honolulu, HI 96813-2711.

9. Alliance for Consumers USA, Inc. is a Nebraska non-profit corporation and can be served via registered agent, Corporate Creations Network, Inc., 3411 Silverside Rd., #104 Rodney Building, Wilmington, DE 19810 and can be served as well at 400 Chisholm Place, ste 304, Plano, Tx 75075.

10. GIP Technology, Inc. is a California corporation that can be served via registered agent Ada Maduno at 335 E. Albertoni St., ste 200-853, Carson, CA 90746 or at her home address of 4142 West 177th Street, Torrance, CA 90504.

11. Ada Maduno is a natural person and officer of GIP Technology, Inc., and can be served at 4142 West 177th Street, Torrance, CA 90504 or 335 E. Albertoni St., ste 200-853, Carson, CA 90746.

12. Paul Maduno is a natural person and officer of GIP Technology, Inc., and can be served at 4142 West 117th Street, Torrance, CA 90504 or 335 E. Albertoni St., ste 200-853

13. Axis Insurance Company can be served at 303 W. Madison Street, ste 500, Chicago, IL 60606.

14. National Congress of Employers, Inc., is a Delaware corporation and can be served via registered agent: National Registered Agents, Inc., 160 GreenTree Drive., ste. 101, Dover, DE 19904.

15. MedSense Guarantee Association is an Illinois corporation that can be served via registered agent: CT Corporation System, 208 SO LaSalle St., ste 814, Chicago, IL 60604.

16. Amalgamated Life Insurance Company is a New York Corporation operating from 333 Westchester Ave., White Plains, New York 10604 and can be served via registered agent CT Corporation System, 818 W. 7th Street, ste 930, Los Angeles, CA 90017.

17. Companion Life Insurance Company is a South Carolina Corporation and can be served at PO Box 99906, Grapevine, Tx 76099 or via registered agent Diane Fischer, 200 E. Gaines St., Tallahassee, FL 32399

18. Chubb Group of Insurance Companies 15 Mountain View Road, PO Box 1615, Warren, NJ 0761.

19. Unified Life Insurance Company is a Vermont Insurance company that can be served via registered agent: CT Corporation System, 400 Cornerstone Dr., ste 240, Williston, VT 05495.

20. Federal Insurance Company is a New Jersey Corporation and can be served at 15 Mountain View Road, PO Box 1615, Warren, NJ 07061.

21. Broadspire, Inc., is a Delaware corporation with a registered agent of Incorp Services, Inc., One Commerce Center, 1201 Orange St., # 600, Wilmington, DE 19899.

22. John/Jane Does 1-10 are currently unknown persons or entities that are also liable for the calls in question.

## Jurisdiction

23. Jurisdiction of this court arises as the acts happened in this county

24. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here.

25. The Defendants regularly had calls placed for their benefit or on their behalf to Tennessee residents for the purpose of soliciting residents to buy

4

their promotional products and services, and these products and services were regularly shipped to Tennessee residents.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

21. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

22. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

*[R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.*

*Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.*

26. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that *"a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." Id.* (specifically recognizing "on behalf of" liability in the context of a an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).

24. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* FCC

5

Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

25. The co-defendants made the autodialed and prerecorded message calls described herein "on behalf of" Foresters within the meaning of the 2008 FCC Declaratory Ruling.

27. On May 9, 2013, the FCC released a Declaratory Ruling reaffirming that a corporation or other entity that contracts out its telephone marketing "*may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers.*"1

27. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "*has apparent (if not actual) authority*" to make the calls. 28 F.C.C.R. at 6586 (¶ 34).

28. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at n.107.

28. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

*[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved,*

6

*wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.*

28 F.C.C.R. at 6592 (¶ 46).

30. Forester are legally responsible for ensuring that the co-defendants complied with the TCPA, even if Foresters did not themselves make the calls.

31. Foresters knew that the telemarketers have violated the TCPA on Foresters' behalf and failed to take effective steps within their power to force the telemarketers to cease that conduct. Finally, the May 2013 FCC Ruling states that called parties may obtain *"evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." Id.* at 6592-93 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer *"should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id.* at 6593 (¶ 46

### The Defendants' Marketing Scheme

40. Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC,

Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc. rely on a series of third parties ("Insurance Sales agents") to promote its goods or services.

**Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc.,  Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc maintain interim control over its agents' actions, both as to telemarketing and other activities.**

43. Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc.,  Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc maintain the right to control the content of their agents' advertising.

44. An example of how Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc maintains the right to control their agents advertising is by:

a. Health Insurance Innovations, Inc., directed its agents to not call the Plaintiff on behalf of its companion insurance companies.

b. Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc also require its agents to maintain an insurance policy insuring the defendants for the actions of the agents.

45. Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company,

Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc exercised all of these rights during the course of their relationship with each of the co-defendants.

## Vicarious Liability Under the FCC's Order

46. The Federal Communication Commission concurs that sellers such as Foresters may not avoid liability by outsourcing telemarketing:

*"Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers(or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."*

*In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349, ¶ 37 (FCC May 9, 2013) (internal citations omitted).

47. Under the standards outlined in the FCC's order and by other Courts interpreting that Order, Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC,

Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc are liable to the Plaintiff under the following theories:

**a. Direct Liability**

**b. Actual Authority**

**c. Ratification**

**d. Apparent Authority**

**Direct Liability**

Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc.,  Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc actively participated in the telemarketing calls that are the subject of this case.

49. The calls to the Plaintiff are an example of how. Although the co-defendants made the calls and took the Plaintiff's information, Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company,

Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc participated in the call by issuing a quotes for insurance.

50. The Plaintiff received a quote from Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, and National Congress of Employers, Inc and was offered insurance and membership with the respective organizations. Additionally, the Plaintiff was sent letters directly from Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc regarding the insurance quotes and insurance from the defendants.

52. It is the purpose of a call, rather than what is said, that matters for TCPA liability. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012).

53. Each call that the co-defendants placed, regardless of how "far" the call recipient permitted the sales pitch to go, was intended by all parties involved to result in sales of

12

the defendant's insurance products and services.

54. Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc issued quotations for insurance wholly derived from the co-defendant's calls, including the ones to the Plaintiff.

55.Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Incalso issued insurance policies to the Plaintiff based on the illegal calls from the co-defendants.

**Actual Authority**

56. With regard to torts committed by an agent, tort committed by an agent, the Restatement of Agency provides: § 7.04 Agent Acts With Actual Authority
A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and

(1) the agent's conduct is tortious, or

(2) the agent's conduct, if that of the principal, would subject the principal to tort liability.

*See* RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. d(2) (2006).

57. The purpose of Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc agents is to serve the above named defendants by soliciting applications for insurance from consumers.

Indeed, the co-defendants did this through the pre-recorded telemarketing alleged in this Complaint.

59. Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc also directed the quality, timing, geographic location and volume of co-defendant's applicants that it sent to them.

**Ratification**

60. In the alternative, Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc repeatedly ratified the co-defendant's illegal marketing scheme by knowingly accepting the benefits of the co-defendant's activities when they accepted applications and customers from them.

63. Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc has continued to do business with telemarketers that are breaking the law to send customers to Foresters for years.

64. In participating in these calls (through the issuance of quotes and policies), Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance

15

Company, Unified Life Insurance Company, National Congress of Employers, Inc manifested an intent to accept the benefit of the co-defendants calling campaigns; including calls that were made by to the Plaintiff that did not result in a quote or policy.

65. Because it accepted the calls' benefits from the co-defendants, including continued customers, Foresters cannot avoid the burden associated with their ratification

66. Vicarious liability for TCPA violations can arise out of ratification. As the FCC stated:

Restatement (Third) of Agency § 2.03, cmt. c. As commonly understood under modern agency principles reflected in the Third Restatement, such apparent authority can arise in multiple ways, and does *not* require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person. *Id.*, reporter's note a. Rather, "a principal may create apparent authority by appointing a person to a particular position." *Id.* Similarly, "a principal may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation." *Id.*, cmt. c. And "[r]estrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations" with others." *Id.* In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability. *In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349 *16, ¶ 34, fn 102.

67. Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc knowingly and actively accepted business that originated through the illegal telemarketing calls complained of herein.

68. The benefits of the relationship Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc requested from the FCC must be accompanied by the burden.

### Apparent Authority

69. Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National

Congress of Employers, Inc gave their agents, including the co-defendants, substantial power to affect their legal relations with third parties, including Plaintiff and consumers generally

Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc cloaked their agents with apparent authority to enter into advertising arrangements on their behalf, including lead generation telemarketing which the Plaintiff received.

71. The co-defendants transferred customer information, including the Plaintiff' information, directly to Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc. Thus, the co-defendants has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling. Each of the co-defendants are an apparent agents of Foresters.

72. By hiring the co-defendants to make calls on behalf of its agents to generate sales

18

leads, Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

73.Each and every co-defendant knew that its calls were resulting in actual quotes for, and sales of, Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc insurance and membership in the respective associations.

## FACTUAL ALLEGATIONS

29. In October 2016, the Plaintiff recieved multiple unwanted phone calls that were initiated by an automated telephone dialing system that contained a pre-recorded message to his cell phone, 615-348-1977. The calls started on or about October 5, 2016 and continued through Februry 14, 2017.

30. The pre-recorded message said *"Hi, my name is Michael and I'm calling from the national health insurance enrollment center. The reason for my call is regarding your previous interest in insurance. We can help you find some affordable health care with benefits that include doctors, hospitals, even emergency room visits. Do you have a few minutes to see what plans are available to you?"*

31. In reality, the call involved an interactive platform that utilized a Filipino call center agent clicking on pre-recorded messages to give the opening pitch and reply to the the Plaintiff's responses. This is called in industry jargon an "Avatar" type system.

32. The Plaintiff determined that the calls were automated from the initial call as the Plaintiff heard a pause of dead air before the line connected and the high volume of multiple additional calls continued to come in from the same caller ID with the same pre-recorded message offering health insurance. The calls came in rapid succession, sometimes multiple calls within a single minute. Multiple calls even came in while the Plaintiff was speaking with an agent.

33. At no point during the call did the agent state the real name of the person or entity calling or on whose behalf the calls were being placed. The "National health enrollment insurance center" is not a trade name, legal name, or DBA of Health Insurance Innovations or any of the other defendants, and the phone number the telemarketer's were calling from was spoofed and was not a real working number.

34. The Plaintiff never consented to being called on his cell phone using an ATDS or pre-recorded message from any of the defendants. The calls were also for a commercial solicitation involving the sale of insurance and not for any emergency purpose.

35. The agents of Health Insurance Innovations were not trained on the use of an internal do-not-call list and the entities that placed the calls failed to maintain an internal do-not-call list.

36. Health Insurance innovations never enforced or punished any agents for placing over 100 illegal calls to the Plaintiff and continues to ratify and accept the business and benefits of the illegal calls.

37. As further evidence of the lack of an internal do not call policy, after the Plaintiff mailed a letter to Health Insurance Innovations citing the illegal phone calls and sought any evidence they may have of the Plaintiff's consent to call. Health Insurance Innovations did not call, but instead sent out an email to all their agents in the United States on November 2nd, 2016 which states *"Please add the following number to your internal DNC lists, and please do not market or sell (even if inbound call) to anyone using this number: 615-348-1977."* Despite this, calls continued to the Plaintiff, through the date of this document.

38. Even after filing suit in a different jurisdiction against the defendants and serving them with a copy of the lawsuit, the calls continued to be placed by the Defendants continuing through February 14, 2017, when the Plaintiff received a call from 423-896-2036 from the defendants selling health

insurance. The Plaintiff had even previously spoken with counsel for Health Insurance innovations regarding the 423 number in an attempt to identify the callers and total number of calls and the defense counsel lied and claimed that the caller from the 423 number was not calling on behalf of Health Insurance Innovations when they actually were.

39. After this email went out from Health Insurance Innovations on November 2nd, 2016, the Plaintiff recieved multiple additional calls from agents of Health insurance innovations to the Plaintiff asking why they were told not to call him on the very same number they were told not to call: 615-348-1977. For example, Mark Grabowski called the Plaintiff a mere 2 days after being explicitly told not to call the Plaintiff on November 4th, 2016 and attempted to sell the Plaintiff insurance.

40. Each and every call was placed by, for the benefit of, and to sell the products and services of: Health Insurance Innovations, Inc., National Health Hub, LLC, Cigna Corporation, Cost Containment Group, Inc., Loyal American Life Insurance Company, Alliance for consumers USA, Inc., Shirley Garcia, Eric Banks, GIP Technology, Inc., Paul Maduno, Ada Maduno, Asentra Health Solutions, LLC, Axis Insurance Company, Amalgamated Life Insurance Company, Broadspire, Inc., Champion Life Insurance Company, Chubb Group Insurance Company, Federal insurance Company, Unified Life Insurance Company, National Congress of Employers, Inc.

41. For the record, the Plaintiff has zero need to actually buy health insurance as he recieves 100% free VA health insurance for life which includes national and international coverage and $8 co-pays for prescribed medicine. No policy offered is going to beat "free".

42. Multiple products were pitched on each call, for example, the Plaintiff was pitched insurance from Cigna Corporation, Loyal American Life Insurance Company, a membership with Alliance for consumers USA, Inc., a Membership with the National Congress of Employers and the individual agents Shirley Garcia and Eric Banks recieved commisions for selling insurance policies to the Plaintiff. Each of the named defendants names appeared on paperwork from the insurance policies that were offered to the Plaintiff as a result of the illegal telephone calls, and as such benefit from the illegal calls. The Plaintiff never actually spoke with the agents whose signature appear on the applications.

43. The Plaintiff is still in the process of researching and obtaining call records and the total number of calls in question as multiple insurance agents, insurance companies, and caller ID numbers were used. The Plaintiff believes the calls to be well in excess of 100 calls.

**Actions by CNAM Telecom service providers and Civil RICO**

44. GIP Technology, Inc. Paul Maduno, Ada Maduno, (hereafter Maduno Defendants) all operate a revenue sharing scheme designed around providing anonymity services for illegal telemarketers and all parties involved know are

going to make illegal calls with the facilitation, direct payments from, and support of GIP Technology.

45. As an example of the types of customers that the Maduno defendants engage and pay DIP fees to for placing illegal telephone calls, one of them is Michael Montes, a notorious telemarketer who has several 6 figure judgments against him from state attorney generals and regulatory agencies.[12]

46. Paul Maduno and his wife Ada Maduno own/control the compaines GIP Technology owns over 700,000 phone numbers which are then given away to telemarketers.

47. Not only are the numbers given away for free, but GIP Technology actually pays the telemarketers fees for each and every telephone call placed, and the more telephone calls that are made, the more money GIP Technology makes and therefore pass on higher comissions to the telemarketers. Additionally, when providing these numbers to telemarketers, the telemarketers have the ability to alter the name that shows up, so instead of showing "*615-348-1977 Craig Cunningham*" for the caller ID, the call could show "*615-348-1977 Rachel Card Services*"

48. The way the money flows is that each time a phone call is placed that has caller ID enabled, the terminating phone company performs a look-up in a database that

[1]https://www.ago.mo.gov/home/attorney-general-sues-five-telemarketers-for-violation-of-missouri-s-no-call-law and

[2]Last week, the Mississippi Public Service Commission announced a $440,000 fine had been imposed against tollfreezone.com, Inc. for alleged violations to the State's No-Call law on eighty-eight violations. http://www.hawg95.com/index.php?pr=archives&blog_archive=2015-12

24

hold caller ID names and numbers. Each time there is a retrieval from this database, the originating phone company (GIP Technology) recieves compensation in the form of dip fees. These phone companies incentivise high volume calling by sharing the DIP fee revenue with the telemarketers placing the calls.

49. Most importantly, the CNAM services hide the telecom service provider information from review or public disclosure and in the Plaintiff's experience this is another key element to hide and facilitate the illegal telephone calls. For example, if I knew that a subscriber of Verizon wireless was placing illegal calls to me, I could complain to Verizon and Verizon would most likely shut that account down that is placing the offending calls. With CNAM services, subpoenas typically only go back to the entity that lists the subscriber of the CNAM services, but I have yet to see any actual phone calls being transmitted through the CNAM service provider.

50. There is very little legitimate use for these CNAM services, and they have become a haven for the "*Rachel w/card services*" scams, IRS scammers, home alarm companies, and vacation cruise companies. Look no further than the Federal Trade Comission et al v Caribbean Cruise Line, Inc., et al in the Southern District of Florida case 0:15-cv-60423-WJZ, in which the FTC brought an enforcement action against Pacific Telecom Communications Group and Fred Accuardi, one of the most prolific CNAM companies in the country that facilitated billions of telephone calls just for a single client, Caribbean Cruise Line, alone.

25

51. In this case, the overseas call centers utilized another notorious CNAM provider, CallerID4U which is a creation of Paul and Ada Maduno. For example just from January 1, 2012 through November 30, 2012 there were over 138,000 complaints about telephone calls from numbers registered to CallerID4u. Paul and Ada Maduno aggressively seek out only the worst of the worst as far as telemarketers in order to maximize the number of illegal telephone calls that will be placed.

52. Paul Maduno, Ada Maduno, and GIP Technology (hereafter Maduno Defendants) both were paid and paid telemarketers for calls that were placed to the Plaintiff by and on behalf of Defendant the insurance defendants above, particularly for the calls before August 1, 2016. The Plaintiff is in the process of obtaining his phone records and shall provide the calls in question in discovery. The calls placed on behalf of the insurance defendants above were also placed for the benefit of the Maduno defendants.

53. The Maduno Defendants profited directly from each and every illegal call placed to the Plaintiff that were also placed on behalf of the insurance defendants above. The Maduno Defendants paid the telemarketer that placed the calls to the Plaintiff , for each and every call, which also was placed for the benefit of the insurance companies above.

54. The Maduno defendants are directly liable for the calls in question or in the alternative are vicariously liable for the calls in question as the calls were made for their benefit. Paying telemarketers to make illegal calls as the Maduno

26

Defendants have done is no different than paying telemarketers to make illegal calls as the insurance defendants has done.

55. The Maduno defendants could be held vicariously liable under common law agency principles of ratification, actual authority or apparent authority.

56. The Maduno defendants ratified the conduct of the telemarketers by paying them thouands of dollars in DIP fee commissions for placing illegal calls to the Plaintiff among others.

## Theories of Liability

57. As these parties stand to profit and benefit from the Plaintiff's enrollment in these programs, they are vicariously liable for the calls as a "seller", as defined by the TCPA and FCC, even if they didn't directly place the calls to the Plaintiff.

58. The individual corporate officers and managers of each of the corporate entities are liable for the calls placed on behalf or for their benefit. They are personally liable for the TCPA damages as they had direct, personal participation in causing the illegal telephone calls to be made as well as they directly authorized the illegal telemarketing calls to be made.

59. The individual corporate officers also failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA which makes them personally liable for the telephone calls made on their behalf and for their benefit.

60. These phone calls violated the TCPA in two ways, first by placing multiple automated telephone calls to the Plaintiff's cell phone in violation of 47 USC 227(b), and second by not conforming to the requirements of 47 USC 227(c)(5) and the FCC's rulemaking authority under 47 CFR 64.1200(d), which requires the defendants to have a written policy for maintaining a do-not-call list, failure to train agents and personnel engaged in telemarketing on the use of the do-not-call list, and the failure to identify the party placing the call or the entity for which the call is being placed. Each of the Defendants are jointly liable to the Plaintiff in the amount of $3,000 per call made, $1500 for violating 47 USC 227(b) and $1500 for violating 47 USC 227(c)(5). Additionally, each product offered by each company represents a new cause of action entitling the Plaintiff to $3,000 per call per defendant.

61. The Plaintiff alleges direct, vicarious, joint, and several liability for the listed corporations and the officers of the corporations. Additionally, the officers of the corporations have a direct role in the illegal conduct, authorizing it and ratifying the illegal telephone calls.

62. The officers of each and every listed corporation had direct, personal conduct in authorizing the telephone calls or oversaw and directed the telemarketing efforts for which their corporations benefitted. The officers set company policy and directed the marketing efforts of the respective companies.

**Actual Damages**

28

63. The Plaintiff has suffered actual damages in the form of the enrollment fees charged.

64. Additionally, the Plaintiff has suffered annoyance, frustruation, anger, loss of cell phone use, reduced battery life of his cell phone due to the calls.

## CAUSES OF ACTION:

### COUNT I

### Violations of the Telephone Consumer Protection Act (TCPA)

65. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

66. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by using an autoated telephone dialing system to place calls to the Plaintiff's cell phone in violation of 47 USC 227(b).This entitles the Plaintiff to recover $1500 per call.

## CAUSES OF ACTION:

### COUNT II

### Violations of the Telephone Consumer Protection Act (TCPA)

67. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

68. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by 47 USC 227(c)(5) by way of 47 CFR 64.1200(d) and failed to

comply with the requirements to maintain and train employees on the use of a do-not-call list.

## PRAYER FOR DAMAGES AND RELIEFS

A.   WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against each and every defendant for the following:

B.  Statutory damages of $3000 for each phone call for each defendant mentioned in the call

C.  Actual damages as determined at trial

D.  Pre-judgment interest from the date of the phone calls

E.  Attorney's fees for bringing this action; and

F.  Costs of bringing this action; and

G.   For such other and further relief as the Court may deem just and proper

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted 2/14/2017

Craig Cunningham Plaintiff, Pro-se, 615-348-1977

5543 Edmondson Pike, ste 248, Nashville, TN 37211