UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAIG CUNNINGHAM,  Plaintiff,  v.  HEALTH PLAN INTERMEDIARIES HOLDINGS, LLC d/b/a HEALTH INSURANCE INNOVATIONS, et al.,  Defendants. | Case No. 17-cv-1216  Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Craig Cunningham sued 20 Defendants under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.* In his second amended complaint [73], Plaintiff asserts four putative class claims based upon unwanted telemarketing calls he allegedly received on his cell phone. Numerous Defendants have moved to dismiss all claims for various reasons, including lack of personal jurisdiction and failure to state a claim.

Because Plaintiff served different Defendants at different times, responsive pleadings in this case do not all follow the same timeline. Thus, this opinion addresses only five of the pending motions to dismiss, brought by the following Defendants: Health Plan Intermediaries Holdings, LLC (HPI) [60]; National Health Hub, LLC (NHH), Alliance for Consumers USA, Inc. (AFC), and Amalgamated Life Insurance Company (ALI) [62]; Cigna Health and Life Insurance Company (Cigna) [64]; Loyal American Life Insurance Company (LALI) [82]; and GIP Technology,

1

Paul Maduno, and Ada Maduno (together, GIP) [86]. For the reasons explained below, this Court grants all five motions.

I.  The Complaint's Allegations

In October 2016, Defendants' third-party agents started calling Plaintiff's cell phone to try to sell him health insurance. [73] ¶ 35. These calls—over one hundred total—continued through February 2017. *Id.* ¶ 36. Plaintiff received each call in Nashville, Tennessee, where he lives. *Id.* ¶ 4; [1] ¶ 25.[1]

Defendants' agents called through an automatic telephone dialing system (ATDS). [73] ¶ 37. Plaintiff knew that the calls came through an ATDS because, after answering the calls, he always heard a long pause before a prerecorded message began. *Id.* ¶ 38. The prerecorded message came from the "National Health Insurance Enrollment Center"; that name does not connect to any Defendant, and the calls never revealed "the real name of the person or entity calling." *Id.* ¶¶ 39–40. But the calls mentioned each Defendant's products, and Plaintiff got written offers in the mail featuring all Defendants' names. *Id.* ¶ 41.

Plaintiff never consented to receive calls made using an ATDS. *Id.* ¶ 48. In fact, he says that he contacted HPI after the calls started to express that Defendants did not have permission to contact him. *Id.* ¶ 50. Plaintiff alleges that HPI then emailed "the other Defendants as its agents" to tell them to add Plaintiff's phone number to their internal Do Not Call lists. *Id.* Despite that communication, Plaintiff continued receiving soliciting phone calls from Defendants. *Id.* ¶ 51.

---

[1] This Court takes judicial notice of Plaintiff's original complaint, which he first filed in the Middle District of Tennessee and later refiled in this district. [1]. In that complaint, Plaintiff states: "the acts and transactions occurred here," in the Middle District of Tennessee. *Id.* ¶ 24.

2

Plaintiff alleges that GIP, a technology company, facilitated the unwanted phone calls by providing phone numbers and caller ID services to the other Defendants. *Id.* ¶ 55. Defendants used a GIP service that prevents a call's recipient from learning the caller's telecom service provider, thus preventing the recipient from complaining to the service provider about unwanted calls. *Id.* ¶ 58.

Plaintiff alleges that "all Defendants do business" within Illinois. *Id.* ¶ 3. Plaintiff also alleges that "each and every Defendant" acted as "an agent and/or employee of each of the other Defendants," *id.* ¶ 25, and that Defendants relied upon third-party "Insurance Sales Agents" to carry out their core business functions, including marketing "the products and services of each and every other Defendant," *id.* ¶¶ 26, 30. Plaintiff claims that Defendants control their agents' actions, including by marketing each other's products to potential customers. *Id.* ¶ 27. Finally, Plaintiff says that Defendants ratified each other's actions by knowingly accepting "applications and customers from each other." *Id.* ¶ 32.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable

3

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff must make a prima facie jurisdictional showing. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In evaluating whether a plaintiff makes a prima facie showing, this Court resolves factual disputes in the plaintiff's favor. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). But if a defendant submits evidence opposing jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783.

### III. Analysis

#### A. Personal Jurisdiction

HPI, NHH, AFC, ALI, and GIP argue that this Court lacks personal jurisdiction over them because they are incorporated and have their principal places

of business in other states, operate almost entirely in other states, and largely lack the ability to initiate phone calls from within Illinois. [60] at 3–9; [62] at 2–8; [87] at 2–6. This Court agrees, except as to GIP.

This Court's exercise of personal jurisdiction over a non-consenting out-of-state defendant must satisfy both the Illinois long-arm statute and the federal Constitution. *See Destiny Health, Inc. v. Conn. Gen. Life Ins. Co.*, 741 F. Supp. 2d 901, 910 (N.D. Ill. 2010); *see also Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (explaining that federal courts may forgo analyzing jurisdiction under the Illinois Constitution because the federal and Illinois constitutional standards remain the same). The Illinois long-arm statute allows jurisdiction on any basis "permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Thus, the statutory and constitutional inquiries merge: if this Court may constitutionally exercise personal jurisdiction over an out-of-state defendant, then that exercise comports with the Illinois long-arm statute. *See Greving*, 743 F.3d at 492.

The Fourteenth Amendment's Due Process Clause provides the touchstone for assessing personal jurisdiction. *See Citadel*, 536 F.3d at 761. Due process requires that a defendant have "certain minimum contacts" with the forum state, such that maintaining a suit there "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Cases following *International Shoe* distinguish between general (or all-purpose) jurisdiction and specific (or case-linked) jurisdiction. *See BNSF Ry. Co. v. Tyrrell*,

5

137 S. Ct. 1549, 1558 (2017) (collecting cases).

### 1. General Jurisdiction

General jurisdiction exists when a defendant has "continuous and systematic" connections to a state that render the defendant "essentially at home in the forum." *Id.* (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014)). A corporation's place of incorporation and principal place of business provide "paradigm" forums for general jurisdiction. *Daimler*, 134 S. Ct. at 760. In an exceptional case, a corporate defendant might have operations "so substantial and of such a nature" as to render that defendant "at home" in another forum. *BNSF*, 137 S. Ct. at 1558 (internal quotation marks omitted).

This is not that exceptional case. The facts here clearly do not give rise to general jurisdiction over any of the moving Defendants, and Plaintiff does not suggest otherwise in his briefs. *See* [92] at 10–11 (arguing for specific jurisdiction); [93] at 6–8 (same); [94] at 8–10 (same).

### 2. Specific Jurisdiction

For an exercise of specific jurisdiction to pass constitutional muster, the defendant's contacts "must directly relate to the challenged conduct or transaction." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). The defendant must have "purposefully directed" its activities at the forum state, and the alleged injury must arise out of those forum-related activities. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Thus, for specific jurisdiction to exist here, Defendants must have had purposeful contacts with Illinois that directly relate to

6

the phone calls that Plaintiff complains about.

In support of its motion to dismiss, HPI submitted a declaration from its corporate parent's Vice President of Compliance. [60-2]. The declaration states that HPI is a Delaware limited liability company (LLC) with its principal place of business in Tampa, Florida, and that HPI has no corporate offices, real property, or bank accounts in Illinois. *Id.* ¶ 2. None of HPI's 127 employees work in Illinois. *Id.* ¶¶ 7–8. Most importantly, HPI has "no physical infrastructure or ability to initiate any telephone calls from within the State of Illinois." *Id.* ¶ 9.

Likewise, NHH's President declares that NHH is a Florida LLC with its principal place of business in Fort Lauderdale, Florida, and that NHH has no corporate offices, real property, or bank accounts in Illinois. [62-2] ¶¶ 2, 4–5. NHH has no employees in Illinois, and "no physical infrastructure or ability to initiate any telephone calls from within the State of Illinois." *Id.* ¶¶ 6, 8.

Continuing the pattern, AFC's President declares that AFC is a Nebraska corporation with its principal place of business in Plano, Texas. [62-3] ¶ 2. Like HPI and NHH, AFC has no corporate offices, real property, bank accounts, or employees in Illinois. *Id.* ¶¶ 4–6. And AFC has "no physical infrastructure or ability to initiate any telephone calls from within the State of Illinois." *Id.* ¶ 9.

Finally, ALI's Executive Vice President declares that ALI is a New York company with its principal place of business in New York. [62-4] ¶ 2. ALI has no corporate offices, real property, or bank accounts in Illinois, although two of its 482 employees work in Illinois. *Id.* ¶¶ 4–6. Like the other moving Defendants, ALI "has

7

no physical infrastructure within the State of Illinois." *Id.* ¶ 9.

GIP did not submit any declarations or other evidence supporting its jurisdictional challenge. *See generally* [87]. GIP argues in its brief, however, that it does not conduct business in Illinois and that it has "no connection or affiliation with" any other Defendants. [87] at 2.

GIP aside, the moving Defendants' evidence depicts companies with essentially no connection to Illinois. Most importantly, these companies lack the infrastructure necessary to operate an ATDS within Illinois, and so could not have launched the offending calls to Plaintiff from within this state. Given that evidence, Plaintiff "must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction" to keep HPI, NHH, AFC, and ALI in the case. *Purdue Research*, 338 F.3d at 783. Plaintiff fails to do so.

Instead, Plaintiff falls back on his complaint, arguing that Defendants' declarations fail to contradict any of his claims. *See, e.g.*, [93] at 6. Plaintiff says that he makes a prima facie showing of personal jurisdiction by alleging that all Defendants act as each other's agents and that Defendants Medsense and Axis are incorporated in Illinois. *Id.* So, Plaintiff claims: "Jurisdiction for one Defendant thus satisfies jurisdiction for all Defendants." *Id.*

Plaintiff's last assertion flies in the face of decades of precedent emphasizing that determining whether personal jurisdiction exists requires defendant-specific analysis. *See, e.g.*, *BNSF*, 137 S. Ct. at 1558 (collecting cases). Without the requisite analysis, merely respecting one defendant's due-process rights cannot

8

make up for violating a co-defendant's rights. That said, this Court disagrees that Defendants' declarations fail to contradict any of Plaintiff's claims. Indeed, they refute Plaintiff's bare-bones allegation that "all Defendants do business within the State of Illinois." [73] ¶ 3. Plaintiff correctly points out that agency relationships may be relevant to the question of specific jurisdiction, *see Daimler*, 134 S. Ct. at 759 n.13, but Plaintiff's deficient and conclusory allegations (as discussed below) that all Defendants act as agents of all other Defendants cannot defeat the evidence that HPI, NHH, AFC, and ALI offer. This Court dismisses HPI, NHH, AFC, and ALI for lack of personal jurisdiction.

As for GIP, this Court cannot dismiss it for lack of personal jurisdiction because GIP did not provide any evidence to contradict Plaintiff's claim that it does business in Illinois. This Court cannot rely upon arguments in a brief as if they were sworn statements made under penalty of perjury. *See Lee v. Chi. Youth Ctrs.*, 69 F. Supp. 3d 885, 888 (N.D. Ill. 2014) (explaining that "statements of lawyers in briefs are not evidence"). Without any affirmative evidence, this Court must resolve disputes over relevant facts—including that GIP does business in Illinois—in Plaintiff's favor. *Purdue Research*, 338 F.3d at 782.

### B. Failure to State a Claim

Plaintiff claims that all Defendants have vicarious liability for the alleged TCPA violations because "each and every Defendant" acted "as the agent of each and every other Defendant" and relied upon a network of "Insurance Sales Agents" to make telemarketing calls to Plaintiff. [91] at 7. Plaintiff does not allege that any

9

Defendants made telemarketing calls themselves. Instead, he alleges that his claims survive under any one of three agency theories: actual authority, apparent authority, and ratification. *Id.* at 7–8. Cigna, LALI, and GIP argue that Plaintiff's claims fail for various reasons, including that Plaintiff fails to allege any facts supporting an agency relationship. *See generally* [64]; [82]; [86]. This Court agrees.

In a 2013 ruling, the Federal Communications Commission (FCC) explained that sellers may face vicarious liability under the TCPA even when they do not directly initiate telemarketing calls. *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6584 (2013). If a seller's representative violates the TCPA, the seller may face liability "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* The FCC's ruling relied upon federal common-law principles of agency, *id.* at 6582, which accord with the Restatement (Third) of Agency. *See Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13-cv-2018, 2013 WL 5346430, at *3 (N.D. Ill. Sept. 23, 2013). The FCC has authority to promulgate implementing regulations for the TCPA, 47 U.S.C. § 227(b)(2), and both sides agree that the FCC's ruling applies here. Accordingly, this Court addresses each theory of vicarious liability in turn.

1. **Actual Authority**

The Restatement (Third) of Agency defines agency as a "fiduciary relationship that arises when one person"—a principal—"manifests assent to another person"—an agent—"that the agent shall act on the principal's behalf and

10

Case 3:18-cv-00518   Document 148   Filed 02/13/18   Page 10 of 15 PageID #: 861

subject to the principal's control." § 1.01. Actual authority arises when an agent "reasonably believes," based upon manifestations that the principal makes to the agent, "that the principal wishes the agent" to act. *Id.* § 2.01.

First, Plaintiff alleges that "each and every Defendant" acted as "an agent and/or employee of each of the other Defendants." [73] ¶¶ 25, 43. This conclusory allegation has several failings, including that it does not identify a principal for the web of agents. An agency relationship cannot exist without a principal. *See* Restatement (Third) Agency § 1.01. Drawing inferences in Plaintiff's favor, *Iqbal*, 556 U.S. at 678, he alleges in one sentence that HPI was the principal, because HPI "sent an email to the other Defendants as its agents" instructing them to put Plaintiff's phone number on Do Not Call lists, [73] ¶ 50. But according to Plaintiff, the other Defendants ignored HPI's instruction and telemarketers continued calling him. *Id.* So, even as alleged, HPI did not control the other Defendants' actions, and was not their principal. *See Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 825 F.3d 793, 798 (7th Cir. 2016) (Because the alleged agent "expressly contradicted defendant's actual instructions, this is clearly not express actual agency.").

Those issues aside, Plaintiff's allegations of universal agency among Defendants offer nothing more than "threadbare recitals of the elements of a cause of action" and conclusory statements. *Limestone Dev. Corp.*, 520 F.3d at 803. Although Plaintiff does not have to allege facts completely within Defendants' knowledge at this stage, he does have to allege a factual predicate "that gives rise to an inference of an agency relationship." *Mauer v. Am. Intercontinental Univ., Inc.*,

11

No. 16-cv-1473, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016). Plaintiff's allegations lack that factual predicate. *Cf. id.* at *3 (complaint sufficiently pled an agency relationship by describing a "detailed chain of events" connecting the defendant to a telemarketer).

Plaintiff also alleges that Defendants rely upon third-party "Insurance Sales Agents" to carry out their core business functions, including marketing "the products and services of each and every other Defendant." [73] ¶¶ 26, 30. Plaintiff uses the term "agents" in his complaint to refer both to Defendants acting as each other's agents and to the third-party telemarketers acting as Defendants' agents, thus failing to specify what exactly he alleges that each actor did. *See, e.g., id.* ¶¶ 30–31. Plaintiff's complaint further lacks factual allegations showing that the "Insurance Sales Agents" actually acted at Defendants' behest. Again, he offers only conclusory allegations that Defendants had "control over their agents' actions," *id.* ¶ 27, but such allegations do not bring his claims across the line from the merely possible to the plausible, *see Williamson*, 714 F.3d at 436. In short, Plaintiff fails to sufficiently plead that the telemarketers had Defendants' actual authority.

### 2. Apparent Authority

Apparent authority arises when a third party "reasonably believes" that an actor "has authority to act on behalf of the principal *and* that belief is traceable to the principal's manifestations." Restatement (Third) Agency § 2.03 (emphasis added). Here, Plaintiff fails to allege that any Defendants ever manifested *to him* that the telemarketers or other Defendants had authority to act on their behalf, s*ee*

*generally* [73], and thus he fails to allege apparent authority.

Plaintiff's only contact with any Defendant came when he wrote a letter to HPI stating that "Defendants did not have Plaintiff's consent to contact him." *Id.* ¶ 50. Plaintiff alleges that HPI then emailed *the other Defendants* to instruct them to add Plaintiff's phone number to internal Do Not Call Lists. *Id.* Emailing the other Defendants does not qualify as making a manifestation to Plaintiff. Besides, the fact that the other Defendants disregarded HPI's instruction and continued calling Plaintiff, *id.*, makes it unreasonable for Plaintiff to believe that the other Defendants acted as HPI's agents, see *Paldo Sign*, 825 F.3d at 798.

Plaintiff argues that he reasonably believed that the telemarketers had apparent authority simply because they mentioned Defendants' products on their calls and sent him paperwork featuring Defendants' names. [91] at 9–10 (citing *Paldo Sign*, 825 F.3d at 797). This argument has several problems. First, as noted above, apparent authority requires that the principal made manifestations *to* the third party (in this case, Plaintiff) that created the third party's reasonable belief. *See* Restatement (Third) Agency § 2.03; *see also Dish Network*, 28 F.C.C.R. at 6579 (defining apparent authority as "when the seller affirmatively, or through negligent inaction, makes it appear to third parties that the telemarketer has authority to act on the seller's behalf."). Second, contrary to Plaintiff's characterization, the TCPA plaintiff in *Paldo Sign* did not argue that the telemarketers who sent him faxes had the defendant's "implied or apparent authority," 825 F.3d at 798, so that case does not support Plaintiff's apparent authority theory. Finally, Plaintiff's approach to

13

apparent authority would create the absurd result "of imposing liability for the same telephone call on numerous clients" of a lead generator, "including competitors of one another." *Smith*, 2013 WL 5346430, at *5.

Because Plaintiff fails to allege any manifestations that Defendants made to him, he fails to sufficiently plead apparent authority.

### 3. Ratification

Ratification happens when a principal affirms another party's prior act, "whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) Agency § 4.01. Plaintiff alleges that: "Each and every Defendant also ratified the illegal actions of every other defendant by knowingly accepting the benefits of each Defendant's activities by accepting applications and customers from each other." [73] ¶ 32.[2] Plaintiff further alleges that Defendants "transferred valuable customer information to one another based on the results of these telemarketing calls." *Id.* ¶ 33. These conclusory allegations fail to state a claim for vicarious liability under a ratification theory.

Here again, Plaintiff offers nothing more than "threadbare recitals of the elements of a cause of action" and conclusory statements. *Limestone Dev. Corp.*, 520 F.3d at 803. Plaintiff must allege some factual predicate "that gives rise to an inference of an agency relationship." *Mauer*, 2016 WL 4651395, at *2. Plaintiff's complaint lacks that factual predicate, and his broad and sweeping ratification allegations fail to move the alleged misconduct across the line between "sheer

---

[2] Notably, Plaintiff alleges that he had no interest in buying insurance products because he has free lifetime coverage through another source, [73] ¶ 41, so Defendants did not benefit by signing him up as a customer.

14

possibility" and plausibility. *Williamson*, 714 F.3d at 436. As such, this Court grants Cigna, LALI, and GIP's motions to dismiss for failure to state a claim.

## IV. Conclusion

This Court grants the five motions to dismiss at issue here: HPI's [60]; NHH, AFC, and ALI's [62]; Cigna's [64]; LALI's [82]; and GIP's [86]. Plaintiff may replead any dismissed claims. Given Plaintiff's delay in serving many Defendants, this Court expects similar issues to arise in future motions to dismiss. In repleading claims or responding to future motions, Plaintiff should be mindful both of this Court's opinion and his obligations under Federal Rule of Civil Procedure 11. The motion hearing set for 3/28/2018 at 9:45 a.m. in Courtroom 1203 stands.

Dated: February 13, 2018

                                                  Entered:

                                                  John Robert Blakey
                                                  United States District Judge